NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1118

ADAM JAMES BRADLEY

vs.

COMMONWEALTH OF MASSACHUSETTS & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Adam Bradley, an inmate serving a life sentence, filed this pro se civil action, claiming that while he was in custody and awaiting trial for murder, he was physically attacked on four separate occasions by members of law enforcement. He further alleged that defendants employed by the Middlesex Sheriff's Office conspired with members of law enforcement to cover up the assaults by failing to process his inmate grievances.

---

[1] Roy Frost, Deputy Chief of the Billerica Police Department; Anthony DeLucia, Massachusetts State Police Trooper; Peter Koutoujian, Middlesex Sheriff; Shawn Jenkins, Superintendent of the Middlesex House of Correction; Frank Bourgeois, Deputy Chief of Middlesex House of Correction; John MacMillan, Assistant Deputy Superintendent of the Middlesex House of Correction; and the town of Billerica. All defendants were sued in their official and individual capacities. As is our usual practice, we take the parties' names and capacities as they appear in the operative complaint.

The defendants filed motions to dismiss pursuant to Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974); Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974); and Mass. R. Civ. P. 12 (b) (9), as amended, 450 Mass. 1403 (2008). A judge of the Superior Court allowed the defendants' motions to dismiss, reasoning, in part, that because Bradley had previously filed several lawsuits arising from the same underlying facts, the present complaint constituted claim splitting, a practice barred by Mass. R. Civ. P. 12 (b) (9). The judge further reasoned that dismissal was warranted pursuant to Tinsley v. Framingham, 485 Mass. 760 (2020), and Mass. R. Civ. P. 12 (b) (6). We affirm the judgment.

Operative facts of Bradley's complaint. In December 2013 Bradley was charged with murder in the first degree and in February 2014 held in custody at the Middlesex house of correction as a pretrial detainee. On February 5, 2019, Bradley, acting pro se, filed this civil action against the defendants and, in January 2020, filed an amended complaint, which became the operative complaint. In the complaint he asserted twenty-one separate counts against eight named defendants alleging that on four separate occasions he was

2

physically assaulted by the defendants Frost and DeLucia.[2]  We briefly describe each alleged assault and battery.

1.  The alleged first attack.  Bradley's complaint alleges that on August 7, 2012, he was at the Middlesex Superior Court in Woburn waiting to testify before the grand jury investigating the homicide of Quentin Koehler.  Bradley alleges that while at the court house, he overheard a conversation between two unnamed employees of Salem Hospital and defendants Billerica Police Deputy Chief Roy Frost, State Trooper Anthony DeLucia, and an assistant district attorney.  Bradley heard the hospital employees tell the defendants that the hospital had already provided video surveillance and medical records of one of the suspects to the police without a subpoena and that the investigators should send them a subpoena now "so no one knows what we did."  Bradley alleges he heard the prosecutor respond that she would get rid of the originals and wanted it to look "official."  After this conversation, Bradley alleges that DeLucia and Frost placed him under arrest and handcuffed him.  According to Bradley, Frost told Bradley to "forget" what he had just heard and seen.  Bradley refused to remain silent about the

_____

[2] Bradley subsequently narrowed the scope of the complaint, stating that the action was brought "for only the assault and beatings incident" and explained that statements in his complaint about the homicide investigation and his conviction were only meant to explain the reason why the beatings occurred.

alleged corruption by law enforcement.  Bradley claims that while he was handcuffed, Frost repeatedly punched him in the stomach.  Frost then allegedly told Bradley that he (Frost) would track down Bradley and his family and kill them unless he promised never to mention what Bradley had just seen and heard.  Bradley, fearful of the defendants, agreed not to speak about the incident and "for good measure" Frost punched him in the jaw while defendant DeLucia held his arms.  Bradley alleges that he was then let out of handcuffs and left the court house without testifying before the grand jury.  Bradley claims that at his criminal trial the medical records (as well as other fabricated evidence) were admitted in evidence and used against him, resulting in his conviction.

2.  The alleged second attack.  On April 23, 2015, Bradley, who was detained at the Billerica house of correction awaiting trial on murder charges, filed a citizen's complaint about the alleged 2012 beating by defendants Frost and DeLucia at the court house.  Five days later, Bradley was told to report to the visitors' room to meet with his attorney.  Bradley alleges that instead of his attorney waiting for him, the defendants Frost and DeLucia were waiting for him.  Bradley further alleges that Frost and DeLucia told him that he was not to file any complaints or talk about what happened at the court house and when Bradley told them he planned on filing a civil lawsuit,

4

Frost and DeLucia physically assaulted him, causing a chipped tooth, black eye, bloody nose, and fat lip.

3. _The alleged third attack_.  On July 10, 2015, Bradley mailed a civil complaint against Frost and DeLucia to the Superior Court.  He claims that he was told that his civil complaint was confiscated and deemed to be contraband.  Bradley alleges that subsequently, on July 24, 2015, Frost and DeLucia again met him in the visitors' room and beat him and threatened to kill his daughters if he tried to file the civil action, grievances, or attempted to expose them.

4. _The alleged fourth attack_.  Bradley claims that Frost and DeLucia returned to the Billerica house of correction in November of 2017, and Frost choked him until he became unconscious.

5. _Other allegations related to the alleged attacks_. Bradley further alleged that the defendants Jenkins, Bourgeois, and MacMillan, all employed at the Middlesex house of correction (house of correction defendants), violated his constitutional rights by failing to properly process Bradley's inmate grievances about the assaults.[3]

---

[3] We note that in the complaint, Bradley also claims that Superintendent Jenkins violated his rights by monitoring his mail.  However, as noted in footnote 2, Bradley subsequently clarified that his civil action was "for only the assault and beatings," so we do not address the claim relating to the monitoring of his mail.

Discussion. We review a motion to dismiss under the de novo standard. See Okoli v. Okoli 81 Mass. App. Ct. 381 (2012). Dismissal of an action under Mass. R. Civ. P. 12 (b) (9) is appropriate where the parties and the issues are the same as those in a prior action still pending in the Commonwealth. The purpose of the rule is to prevent the "long-barred practice of claim-splitting." M.J. Flaherty Co. v. United States Fid. & Guar. Co., 61 Mass. App. Ct. 337, 339 (2004). "Dismissal under [rule 12 (b) (9)] is proper when the same parties are involved in two actions, one begun before the other, and [i]t is apparent from the face of the present complaint . . . that all the operative facts relied on to support the present action had transpired prior to the commencement of the first action" (emphasis added; quotation and citation omitted). Gold Star Homes, LLC v. Darbouze, 89 Mass. App. Ct. 374, 377 (2016). A case is considered pending when an appeal is still viable at the time when the subsequent action is filed. See Keen v. Western New England College, 23 Mass. App. Ct. 84, 85 n.2 (1986).

Claim splitting and claim preclusion are closely related but "distinct concepts." Jinks v. Credico (USA) LLC, 488 Mass. 691,708 n.20 (2021). "The test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming that it were final, would preclude the second suit." Id. quoting Katz v. Gerardi, 655 F.3d 1212, 1218 (10th

6

Cir. 2011).  A dismissal on the grounds of claim splitting "generally occurs while 'the dismissed party is involved in another pending suit regarding the same subject matter against the same defendants.'"  Jinks, supra, quoting Katz, supra at 1219.  Claim preclusion "is a ramification of the policy considerations that underlie the rule against splitting a cause of action and is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.'"  Massaro v. Walsh, 71 Mass. App. 562, 565 (2008), quoting Heacock v. Heacock,402 Mass. 21, 23 (1988).  The rule against claim splitting extinguishes a claim "even though the claimant is prepared in the second action to present different evidence or legal theories to support his claim."  Massaro, supra, quoting Heacock, supra.

Prior pending cases.  We turn now to examine the prior actions that Bradley filed and were pending before he filed this action.  Bradley filed the first complaint (Bradley I) in 2018. Bradley I asserted 655 counts against thirty-one defendants concerning his pretrial detention, prosecution, and conviction for murder while he was incarcerated at the Middlesex house of correction between February 2014 and December 2017. All of the defendants named in the present underlying action are also named defendants in Bradley I.

7

The defendants in Bradley I had filed motions to dismiss that complaint, and, while those motions were pending, Bradley filed a motion for leave to file a third amended complaint in the present underlying action. In it, he alleged that after he was convicted of murder and transferred to state prison, defendant Sheriff Koutoujian visited him in July 2019, attempted to convince Bradley to dismiss the civil lawsuit, and when Bradley refused to do so, Koutoujian assaulted him. The motion to amend the complaint was denied as being both prejudicial and futile as it was not materially different from the operative amended complaint.

Despite detailed and voluminous claims of wrongdoing by the defendants during his pretrial detention, Bradley I fails to contain any allegations that Frost and DeLucia assaulted Bradley in order to prevent Bradley from disclosing their alleged manipulation of the evidence in his murder trial. And Bradley did not attempt to amend the complaint in Bradley I to allege assault and battery by defendants Frost and DeLucia.[4]

Bradley filed a second action on February 5, 2019 (Bradley II). Bradley II contains the same factual allegations giving

_____

[4] While a portion of Bradley I was dismissed in 2020, the case against some of the defendants was pending when the motion judge made his ruling in this case. See R.A. App. I at 277-298; 321-322.

8

rise to the present complaint, with one distinction.  Bradley II does not contain any allegations of a physical attack by DeLucia and Frost that day or any subsequent retaliatory attacks for refusing to remain quiet about the alleged illegal conduct by the prosecution team as it related to his murder trial.[5]

The complaint in the present action simply realleges and regurgitates the facts and claims that Bradley had previously set forth in or were part of the same transaction or series of connected transactions as those set forth in Bradley I and Bradley II.  See Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 570-572 (2004).  All four assaults alleged in the present underlying action occurred prior to the filing of both Bradley I and Bradley II.

Moreover, as it relates to Bradley's claim that the house of correction defendants conspired to prevent Bradley from filing grievances about the beatings, we compare the allegations in

---

[5] Bradley II was ultimately dismissed, but an appeal, filed by Bradley, is currently pending.  We also note that on the same day that he filed the present underlying action (Bradley III), Bradley filed a separate civil action in Middlesex Superior Court against defendant Frost and others (Bradley IV), alleging a similar conspiracy related to his conviction for murder as set forth in Bradley II.  However, since Bradley IV was filed on the exact same day as the present action, we cannot construe Bradley IV as pending at the time of the filing of the present action. Finally, in April 2019, Bradley filed a civil action against defendant Frost and other town of Billerica defendants (Bradley V) in Suffolk Superior Court.  Bradley filed a motion to voluntarily dismiss Bradley V without prejudice because he had filed the same claim, Bradley IV, in Middlesex Superior Court.

9

Bradley I to that of the complaint at issue here. The complaint in Bradley I alleges that the conditions of his confinement violated his rights and that the house of correction defendants worked in concert with the prosecution team to convict him of murder by planting evidence and by denying him access to the grievance process. All of the operative facts in the present complaint relating to the alleged conspiratorial actions of these defendants also transpired before the commencement of filing in Bradley I and are based upon the same claims or alleged efforts by the defendants to prevent him from his right to file an inmate grievance. See Zora Enters., Inc., v. Burnett, 61 Mass. App. Ct. 341, 346-347 (2004) ("[I]t is apparent from the face of the complaint . . . that all of the operative facts relied on to support the present action had transpired prior to the commencement of the first action [quotation and citation omitted]).

It is clear from analyzing the facts and claims alleged in the complaints, the central issues of Bradley I and Bradley II pertain to the alleged intentional and illegal actions by the defendants during the criminal investigation of Bradley, his pretrial detention, and subsequent prosecution for murder. Final judgments in those case would bar the claims asserted here. See Jinks, 488 Mass. at 708 n.20; Mancuso, 60 Mass. App. Ct. at 570-

10

572.  We therefore agree with the motion judge that this case presents improper claim splitting and dismissal was warranted.[6]

Judgment affirmed.

By the Court (Sacks, Singh & Walsh, JJ.[7]),

Assistant Clerk

Entered:  May 31, 2024.

---

[6] Because we have found that dismissal was appropriate under Mass. R. Civ. P. 12 (b) (9), we need not reach the merits of dismissal under Tinsley v. Framingham, 485 Mass. 760 (2020), rule 12 (b) (6), and Mass. R. Civ. P. Rule 8 (a).

[7] The panelists are listed in order of seniority.