ROBIN LYONS & another[1] *vs.* JOHN A. DUNCAN, THIRD
(and a companion case[2]).

No. 11-P-990.

Norfolk. March 8, 2012. - May 23, 2012.

Present: KATZMANN, SIKORA, & AGNES, JJ.

*Medical Malpractice,* Consent to medical treatment. *Negligence,* Medical
malpractice, Misrepresentation. *Parent and Child,* Consent to medical
treatment. *Consent. Jurisdiction,* Personal, Long-arm statute. *Practice,
Civil,* Pendency of prior action.

In a medical malpractice action, the judge properly granted summary judg-
ment in favor of the defendant for lack of personal jurisdiction under the
Massachusetts long-arm statute, G. L. c. 223A, § 3, where the plaintiffs'
claims arose from medical treatment provided by a nonresident at a hospital
outside the Commonwealth, and where the plaintiffs' allegations of negligent
misrepresentation with regard to two letters written by the defendant did
not suffice to establish jurisdiction under either G. L. c. 223A, § 3(*a*),
which requires the transaction of business in the Commonwealth, or G. L.
c. 223A, § 3(*c*), which distinguishes between intentional and negligent
acts. [768-770]

A Superior Court judge properly dismissed the plaintiffs' medical malpractice
action based on the pendency of a prior action, where the relevant parties
were the same in both cases, the claims were identical to those the plaintiffs
brought (or attempted to bring) in the prior action, and all the operative
facts relied on to support the present action transpired before the com-
mencement of the prior action; and where the prior action was still pend-
ing within the meaning of Mass.R.Civ.P. 12(b)(9). [770-772]

CIVIL ACTION commenced in the Superior Court Department on
March 26, 2007.

A motion to amend the complaint was heard by *Barbara A.
Dortch-Okara,* J., and the case was heard by her on a motion
for summary judgment.

[1]Paul Lyons. Both plaintiffs brought suit individually and on behalf of
Michael Lyons.

[2]Robin Lyons *vs.* John A. Duncan, Third.

CIVIL ACTION commenced in the Superior Court Department on November 12, 2010.

A motion to dismiss was heard by *Elizabeth B. Donovan*, J.

*Chester L. Tennyson, Jr.*, for Robin Lyons & another.

*Daniel E. Burgoyne* for John A. Duncan, III.

KATZMANN, J. This appeal stems from two medical malpractice actions brought in Superior Court by Robin Lyons and Paul Lyons, individually and on behalf of their minor son, Michael Lyons, against Dr. John A. Duncan, III (defendant or Dr. Duncan). In the first case, summary judgment was granted for the defendant for lack of personal jurisdiction under the Massachusetts long-arm statute. The second case was dismissed pursuant to Mass.R.Civ.P. 12(b)(9), as amended, 450 Mass. 1403 (2008). The plaintiffs now appeal from both decisions. We affirm.

*Background.* On December 4, 2003, Michael Lyons suffered a stroke. He was eventually transferred to Hasbro Children's Hospital in Providence, Rhode Island, where he was diagnosed with Moyamoya disease, which affects the circulation of blood in the brain. While at Hasbro Children's Hospital, Michael came under the care of Dr. Duncan, who performed a procedure known as encephalodural arteriosynangiosis on the right side of Michael's brain.

Following the surgery, Dr. Duncan had two follow-up visits with Michael in Providence. After each of these visits, Dr. Duncan mailed a letter to Michael's pediatrician in Massachusetts. In the first letter, dated December 29, 2003, Dr. Duncan described the facts leading up to the diagnosis and surgery, detailed the treatment Michael had received, discussed his condition post-surgery, and specified that Michael would return for another follow-up visit. In the second letter, dated January 26, 2004, Dr. Duncan summarized Michael's previous treatment, described his observations of the patient's condition, and stated that the plan was for Michael's parents to meet with him that week to "discuss their questions and concerns and to discuss the plan of management."

In June, 2004, Michael suffered a second stroke. He was taken to Children's Hospital in Boston, where surgery was eventually performed on both sides of his brain using the pial synangiosis procedure.

In 2007, the plaintiffs filed a malpractice action in Massachusetts against Dr. Thomas Connolly, Michael's pediatrician, and Needham Pediatrics, P.C.[3] In 2010, the plaintiffs amended their 2007 complaint to add Dr. Duncan as a defendant, alleging negligence, lack of informed consent, and claims on behalf of both parents.[4] They subsequently filed a second motion to amend the complaint, seeking to add a claim of negligent misrepresentation against Dr. Duncan based on the two letters that he mailed to Michael's pediatrician. This motion was denied after the judge found that the proposed amendment was "futile" because the contents of the letters "cannot make out a claim of negligent misrepresentation." The same judge granted the defendant's motion for summary judgment after finding that the court lacked personal jurisdiction over the defendant.

In November, 2010, after the judge denied the second motion to amend but before she ruled on the motion for summary judgment in the 2007 case, the plaintiffs[5] brought another malpractice action in Massachusetts against Dr. Duncan. In addition to allegations of negligence and lack of informed consent, the plaintiffs also included the same claim for negligent misrepresentation they had attempted to include in the 2007 case by means of their second motion to amend. A different Superior Court judge granted the defendant's motion to dismiss for several reasons, including "existence of the prior action in 2007 case."

*Discussion.* 1. *2007 case.* The plaintiffs' arguments for personal jurisdiction under the Massachusetts long-arm statute, G. L. c. 223A, § 3, rely on the letters that the defendant mailed from Rhode Island to Michael's pediatrician in Massachusetts. Only the negligent misrepresentation claim relates to these letters. As noted above, the plaintiffs' second motion to amend their 2007 case to include the negligent misrepresentation claim was denied, and the plaintiffs never appealed from that denial. Thus, the

---

[3]The claims against Dr. Connolly and Needham Pediatrics, P.C., are not at issue in this appeal.

[4]In November, 2006, the plaintiffs brought suit against Dr. Duncan in Rhode Island, alleging negligence and lack of informed consent. After the plaintiffs failed to comply with discovery requests, that action was dismissed and judgment entered in favor of the defendant on August 27, 2007.

[5]Although the 2010 case was filed by Robin Lyons only, we will continue to refer to "plaintiffs" throughout the opinion.

negligent misrepresentation claim never became part of the 2007 case. The plaintiffs never raised any arguments either in Superior Court[6] or on appeal to explain why Massachusetts courts should have personal jurisdiction over their other claims against Dr. Duncan. The plaintiffs' 2007 claims arise from medical treatment provided by a nonresident[7] at a hospital outside the Commonwealth, and we discern no basis for personal jurisdiction in relation to these claims. See *Bradley* v. *Cheleuitte*, 65 F.R.D. 57, 59-61 (D. Mass. 1974).

Moreover, even if the negligent misrepresentation claim had been added to the 2007 case, Massachusetts courts still would not have personal jurisdiction over Dr. Duncan under either of the theories advanced by the plaintiffs pursuant to the Massachusetts long-arm statute.[8] The two letters that Dr. Duncan mailed to Michael's pediatrician in Massachusetts and the fact that Dr. Duncan was licensed to practice medicine in Massachusetts are inadequate to constitute "transacting any business in this commonwealth" under G. L. c. 223A, § 3(*a*), where there is no evidence that Dr. Duncan actually practiced medicine in Massachusetts. See *Morris* v. *UNUM Life Ins. Co. of America*, 66 Mass. App. Ct. 716, 721-722 (2006) (two telephone calls and two letters from another State to Massachusetts "amounted to a single, isolated consultation with a Massachusetts physician

---

[6]The plaintiffs filed their second motion to amend the 2007 complaint on or about the same date that they filed their memorandum of law in opposition to the motion for summary judgment. Their memorandum relied exclusively on theories of personal jurisdiction related to the negligent misrepresentation claim. When the judge subsequently denied their second motion to amend, the plaintiffs did not seek to file a new memorandum to raise additional theories to support personal jurisdiction over their other claims.

[7]Since 2008, Dr. Duncan has resided in California. Prior to that, he resided in Rhode Island. Dr. Duncan never owned or rented any real estate in Massachusetts. Furthermore, he never owned or conducted business in Massachusetts, although he did obtain a license to practice medicine in Massachusetts in anticipation of an expansion by his employer that did not occur. At the time that he treated Michael, Dr. Duncan was a salaried employee of Neurosurgery Foundation, Inc., located in Rhode Island.

[8]The Massachusetts long-arm statute states in relevant part: "A court may exercise personal jurisdiction over a person, who acts *directly* or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth; . . . [or] (*c*) causing tortious injury by an act or omission in this commonwealth" (emphasis added). G. L. c. 223A, § 3, as amended by St. 1969, c. 623.

. . . [and] were not sufficiently substantial or continuous to confer personal jurisdiction in Massachusetts" under § 3[*a*]). Furthermore, where the plaintiffs have only alleged negligent misrepresentation with regard to Dr. Duncan's letters, the plaintiffs cannot succeed in establishing jurisdiction under G. L. c. 223A, § 3(*c*), which distinguishes between intentional and negligent acts. *Bradley*, 65 F.R.D. at 60 (no personal jurisdiction under § 3[*c*] where nonresident doctor's out-of-State actions were at most negligent). See *Burtner* v. *Burnham*, 13 Mass. App. Ct. 158, 164 & n.6 (1982) (finding fraudulent representations made by telephone and mail were intentional acts sufficient to establish jurisdiction under § 3[*c*] and declining to decide whether negligent actions would be sufficient for jurisdictional purposes); *Murphy* v. *Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) ("there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-[S]tate sender of a *fraudulent* misrepresentation" [emphasis added]).[9]

Thus, for the reasons stated above, we affirm the Superior Court judge's allowance of the defendant's motion for summary judgment in the 2007 case due to the court's lack of personal jurisdiction.

2. *2010 case.* "Rule 12(b)(9)[10] provides for the dismissal of a second action in which the parties and the issues are the same

---

[9]We also discern no intentional misrepresentation in the accurate historical recitation of treatment in Dr. Duncan's letters.

[10]Rule 12(b)(9) of the Massachusetts Rules of Civil Procedure provides that one of the defenses that can be raised by motion is the "[p]endency of a prior action in a court of the Commonwealth." The 1973 Reporter's Notes to rule 12(b)(9) explain some of the history behind the rule:

"Under prior Massachusetts practice, the courts resolve the problem of successive proceedings based upon the same facts in different ways, depending upon the classification of the dispute, see *Stahler* v. *Sevinor*, 324 Mass. 18, 23 . . . (1949), and cases there cited: (1) if the two actions were both at law, the court ordinarily ordered abatement of the second action; (2) if the two suits were in equity, the plaintiff had to elect dismissal of one; and (3) if one proceeding was at law and the other in equity, the plaintiff likewise had to elect. Rule 12(b)(9) alters these principles. It assumes that the court, rather than the parties, should determine the location of the ultimate litigation; conceivably, for example, the presence in the subsequent action of additional parties might dictate that judicial time and energy would best be conserved by concentrating the litigation in the second court. Whatever the decision,

as those in a prior action still pending in a court of this Commonwealth. The rule prohibits the long-barred practice of claim-splitting." *M.J. Flaherty Co.* v. *United States Fid. & Guar. Co.*, 61 Mass. App. Ct. 337, 339 (2004) (citation omitted).

Here the relevant parties were the same in both cases, and the claims were identical to those the plaintiffs brought (or attempted to bring) against the defendant in the previous action. Moreover, "[i]t is apparent from the face of the present complaint . . . that all the operative facts relied on to support the present action had transpired prior to the commencement of the first action." *Zora Enterprises, Inc.* v. *Burnett*, 61 Mass. App. Ct. 341, 346 (2004), cert. denied, 543 U.S. 1150 (2005), quoting from *Keen* v. *Western New England College*, 23 Mass. App. Ct. 84, 85-87 (1986).

The 2007 case was "pending" within the meaning of rule 12(b)(9) for two reasons. First, the judge had not yet issued a decision on the summary judgment motion in the 2007 case at the time the defendant filed his motion to dismiss in the 2010 case.[11] Contrast *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 249 (1980) (case not "pending" where judgment entered in prior action before filing of motion to dismiss). The 2007 case was also "pending" because, at all times relevant to the 2010 case, a viable appeal existed in the 2007 case after the motion for summary judgment was granted.[12] See *Keen*, 23 Mass. App. Ct. at 85 n.2, and cases cited; *Okoli* v. *Okoli (No. 2)*, *ante* 381, 385 (2012).

The plaintiffs, citing *Hurwitz* v. *Bocian*, 41 Mass. App. Ct. 365, 368-369 (1996), argue that the judge in the 2010 case was

---

the rule sets up the mechanism to effectuate the court's determination: (a) The court may dismiss the later action; or (b) it may require the parties to stipulate a voluntary dismissal of the prior action. Such stipulation is necessary in order to meet the requirements of Rule 41(a)(1)(ii)."

1973 Reporter's Notes to Mass.R.Civ.P. 12, 46 Mass. Gen. Laws Ann. at 145-146 (West 2006).

[11]Judgment entered in the 2007 case on March 2, 2011. The plaintiffs filed their complaint in the 2010 case on November 12, 2010, and the defendant filed his motion to dismiss on February 11, 2011.

[12]The plaintiffs filed a notice of appeal in their 2007 case on March 10, 2011, and the appeal was docketed in this court on June 7, 2011. The defendant's motion to dismiss in the 2010 case was granted on June 3, 2011.

not required to grant the defendant's motion to dismiss after another judge denied their second motion to amend in the 2007 case. The judge did not err here in dismissing the 2010 case pursuant to rule 12(b)(9) where the judge in the 2007 case reached the merits of the plaintiffs' negligent misrepresentation claim by finding the plaintiffs' second motion to amend futile. Contrast *Fafard* v. *Lincoln Pharmacy of Milford, Inc.*, 439 Mass. 512, 517 n.6 (2003) (purpose of rule 12[b][9] — to prevent claim splitting — would not be served by dismissing separate civil action where counterclaims in summary judgment case "were dismissed without reaching their substantive merits"). The plaintiffs could have appealed the denial of their second motion to amend in the 2007 case but chose not to do so, opting instead to simply file another complaint. They had an opportunity to litigate their negligent misrepresentation claims in the 2007 case but failed to do so. *Zora Enterprises, Inc.*, 61 Mass. App. Ct. at 345-347 & n.11. Contrast *Striar* v. *Cooper*, 6 Mass. App. Ct. 841, 841-842 (1978) (dismissal of second action under rule 12[b][9] together with refusal to allow amendment in first action would leave plaintiffs without opportunity to litigate their "separate and distinct" claim). The 2010 case was properly dismissed pursuant to rule 12(b)(9).

*Conclusion.* The summary judgment in the 2007 case is affirmed, as is the judgment of dismissal in the 2010 case.

*So ordered.*